

**U.S. Department of Justice**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 MAR -8  PM 3: 44
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

United States Attorney
District of Maryland

*Joan Mathias*
*Assistant United States Attorney*
*Joan.Mathias@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4850
MAIN: 410-209-4800
FAX: 410-962-9293

December 4, 2017

Andrew C. White, Esquire
201 N Charles Street
Baltimore, Maryland 21201

Re:  United States v. Stewart Sachs  MJG-18-043

Dear Mr. White:

This letter, together with the Sealed Supplement, confirms the plea agreement, which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

## Offense of Conviction

1.  The Defendant agrees to waive indictment and plead guilty to Count One of a Criminal Information now pending against him, in which he is charged with Money Laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offense

3.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about March 19, 2013, in the District of Maryland,

    a.  The Defendant conducted or attempted to conduct a financial transaction
    b.  The transaction involved property represented by a law enforcement officer to be the proceeds of specified unlawful activity: and
    c.  The Defendant intended to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity.

1

## Penalties

4. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 20 years imprisonment, a $425,000 fine, (a fine of the greater of the value of the property, funds, or monetary instruments involved in the transactions or $10,000), and a period of supervised release of at least three years and no more than three years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

2

    d.    The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e.    If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g.    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

3

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

> The base offense level is 20 because of the amount of money involved in the offense, pursuant to U.S.S.G. § 2S1.1(a)(2) and § 2B1.1(b)(1)(G).
>
> An enhancement of 6 levels might apply because the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical, pursuant to U.S.S.G. § 2S1.1(b)(1).
>
> An enhancement of 4 levels might apply because the defendant was in the business of laundering funds, pursuant to U.S.S.G. § 2S1.1(b)(2)(C).
>
> This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. In the event that the base offense level is 16 or greater, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. With respect to the calculation of the advisory guidelines range (with the exception of the agreements set forth in paragraphs 6 and 7), no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a reasonable sentence based on the factors set forth in 18 U.S.C. § 3553(a).

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence.

The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____
James G. Warwick/Joan C. Mathias
Assistant United States Attorneys

6

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-8-18
Date

Stewart Sachs

I am Stewart Sachs' attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3-8-18
Date

Andrew C. White, Esquire

7

Attachment A

*If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt. The Defendant agrees that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

This investigation involved an undercover sting operation. Four undercover meetings took place. At the first meeting, on November 9, 2011, the Defendant, Stewart Sachs met with two IRS undercover agents, who were posing as boyfriend and girlfriend. Mr. Sachs agreed to sell them real estate for cash. During the meeting, Mr. Sachs was informed that the male undercover agent was a narcotics trafficker from the Houston, Texas area.

The second undercover meeting took place on March 8, 2012, and Mr. Sachs showed the male undercover agent properties that he was selling. The first property, 3729 Greenmount Avenue, Baltimore, Maryland, is owned by Beaver Crossing LLC, which is a company owned by Mr. Sachs. Mr. Sachs talked about how the properties were owned by Limited Liability Companies and how Mr. Sachs could transfer the Limited Liability Companies to the undercover agent or anyone else that the undercover agent wanted and no one would know that the undercover agent owned the properties. Mr. Sachs informed the undercover agent that the property did not have to go in the undercover agent's name. The undercover agent again told Mr. Sachs that he was a narcotics trafficker.

The third undercover meeting took place on February 11, 2013. Mr. Sachs and the male undercover agent discussed purchasing the duplex house Mr. Sachs showed him in the second meeting. Mr. Sachs reiterated that, because the duplex was in the name of a Limited Liability Company, no one would know that the undercover agent purchased the property. Mr. Sachs and the undercover agent also discussed laundering $100,000 cash. Mr. Sachs suggested that the male undercover agent overpay for the duplex by $100,000 and provide Mr. Sachs with $100,000 and make it appear to be a commission on the sale of the $350,000 house. The male undercover agent said he would think about it.

The fourth undercover meeting took place on March 19, 2013. The male and female undercover agents met with Mr. Sachs at his business. Mr. Sachs agreed to accept $425,000 in U.S. currency that was represented to Mr. Sachs to be narcotics trafficking proceeds. Mr. Sachs acknowledged that the money was tainted and agreed that the $425,000 would be the sale price for the real property that Mr. Sachs was selling to the undercover agents. Mr. Sachs told the undercover agents that he would issue them four checks for $25,000 each and make them appear to be a loan from Mr. Sachs' company, Worthington Alternative Capital LLC. Mr. Sachs told them it would take a couple of hours to prepare the paperwork and to return to his business at 4:00 to complete the transaction.

The undercover agents returned at the appointed time. The undercover agents brought the $425,000 cash and showed it to Mr. Sachs. The male undercover agent had represented himself to be a narcotics officer on numerous occasions. Mr. Sachs executed the documents to transfer ownership of Beaver Crossing LLC to the female undercover agent. The purpose of having the ownership in the female undercover agent's name was to obscure the true ownership. Mr. Sachs had one of his employees prepare four checks payable to the female undercover agent for $25,000

8

each. These checks represented the $100,000 overpayment, which the undercover agent said he needed to appear to be legitimate income. During the meeting, special agents from the DEA and IRS arrested Mr. Sachs and recovered the $425,000.

                                                James G. Warwick/Joan C. Mathias
                                                Assistant United States Attorneys

      I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

3-8-18
Date                                                          Stewart Sachs

      I am Stewart Sachs' attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

3 8 18
Date                                                          Andrew C. White, Esquire